Elizabeth W. Lund
Berg Lilly, PC
One West Main Street
Bozeman, Montana 59715-4642
406-587-3181
406-587-3240 (Facsimile)
lund@berglawfirm.com
   *Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| ACE FIRE UNDERWRITERS INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>BITTERROOT INVESTIGATIONS DBA D&E GROUP LLC, &<br>CRYSTAL WEST, JR<br><br>Defendants. | Cause No. _____<br><br>**COMPLAINT FOR<br>DECLARATORY JUDGMENT** |

For its Complaint for Declaratory Judgment, Plaintiff ACE Fire Underwriters Insurance Company ("ACE") states, avers, and alleges as follows:

**Background**

1.  This is a declaratory judgment action in which ACE respectfully requests the Court to declare ACE's obligations with respect to certain named Defendants in this action.

1

2. ACE issued a policy of insurance to D&E Group, LLC dba Bitterroot Investigations ("Bitterroot"), Policy No. SPI G74298023 001 with a renewal identified as Policy No. SPI G74298023 002.

3. A true and correct copy of Policy No. SPI G74298023 001 is attached as **Exhibit A** (the "Policy").  Because of the timing of the conduct at issue in the Complaint, it does not appear that the renewal is implicated; however, ACE has reserved its rights under the renewal as well (which provides substantially similar coverage).

4. Bitterroot has been named as a defendant in a lawsuit titled *Thomas L. Mahlen, Jr., John L. Wright, Sean P. McDaniel, Michael V. Mahlen v. Megan N. Mahlen, Crystal West, Jr., Bitterroot Investigations, Hendrickson Law Firm, P.C.*, venued in the United States District Court for the District of Montana, Missoula Division, as cause No. 9:24- cv- 00063- DLC- KLD (the "Underlying Action").

5. A true and correct copy of the Complaint and Demand for Jury Trial ("Underlying Complaint") is attached as **Exhibit B**.

6. Bitterroot's employee, Defendant Crystal West, Jr. ("West") has also been named as a defendant in the Underlying Action.

7. The Defendants have each demanded that ACE provide them with a defense and indemnification for to the claims in the Underlying Action.

8. As set forth below, ACE respectfully requests this Court declare

ACE's rights and duties with respect to its obligations to the Defendants.

## Parties, Jurisdiction & Venue

9. ACE is incorporated under the laws of Pennsylvania and has a principal place of business in Pennsylvania. Accordingly, ACE qualifies as a citizen of Pennsylvania.

10. On information and belief, Defendant West is an individual who resides in Billings, Montana. She therefore qualifies as a citizen of Montana for purposes of diversity jurisdiction.

11. On information and belief, D&E Group LLC, the entity under which Bitterroot is doing business, is a limited liability company whose sole member Devin Heffelfinger resides in Kalispell, Montana. Bitterroot therefore qualifies as a citizen of Montana for purposes of jurisdiction.

12. This Court has personal jurisdiction over each of the Defendants because they are citizens of Montana.

13. ACE is diverse from all Defendants for purposes of 28 U.S.C. 1332(a)(1) jurisdiction.

14. ACE has a good faith basis to believe the amount in controversy exceeds $75,000 exclusive of interest and costs because of the nature and extent of the damages Thomas L. Mahlen, Jr., John L. Wright, Sean P. McDaniel, Michael V. Mahlen (collectively "Underlying Plaintiffs") have asserted against the

Defendants in the Underlying Action and for which ACE requests this Court determine ACE is not responsible. Further, ACE's expenditures on defense fees alone are likely to exceed $75,000 in the Underlying Action.

15. This Court has original jurisdiction over this Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

16. Venue is proper in this Court pursuant to L.R. 3.2(b) because the Underlying Action is venued in the United States District Court for the District of Montana, Missoula Division and because the Missoula Division embraces Flathead County, where the Bitterroot resides. See L.R. 1.2(c)(5).

## FACTS ALLEGED IN THE UNDERLYING ACTION

17. ACE reincorporates and realleges the allegations contained in the previous paragraphs as though fully realleged and re-set forth herein.

18. Underlying Plaintiffs filed their claims against the Defendants on or about May 10, 2024. The following facts are taken from the Underlying Complaint and do not reflect any belief on the part of ACE that such allegations are true, or that Underlying Plaintiffs are entitled to recover any amounts from the Defendants.

19. Underlying Plaintiffs Tom Mahlen ("Mahlen") and Tom Wright are

former partners with the law firm Halvorsen, Mahlen, Wright, P.C.

20. Underlying Plaintiffs Sean McDaniel and Michael Mahlen are individuals whose telephone calls with Mahlen were allegedly illegally recorded.

21. Underlying Plaintiffs generally allege that the Defendants in the Underlying Action violated the Electronic Communications Privacy Act ("ECPA").

22. Underlying Plaintiffs claim Bitterroot was retained to perform surveillance in conjunction with Ms. Mahlen's separation and divorce from Mahlen.

23. Underlying Plaintiffs assert that West was an employee of Bitterroot and was assigned to conduct "investigations" on Ms. Mahlen's behalf.

24. Underlying Plaintiffs allege West installed recording devices, intercepted private oral and electronic communications without Underlying Plaintiffs' consent, and monitored, edited, and distributed those illicit communications.

25. Underlying Plaintiffs also claim West and Ms. Mahlen shared a personal relationship.

26. Underlying Plaintiffs claim that between 2020 and 2022, Bitterroot installed, monitored, and stored video footage of Mahlen while he was in his house and without his knowledge.

27. Mahlen claims Bitterroot viewed, recorded, and listened to Mahlen while he spoke on the telephone, changed clothes, slept, dressed, bathed, disrobed, and otherwise engaged in private activities. Underlying Plaintiffs allege that Bitterroot later manipulated and edited the recordings and used them in the dissolution matter instituted by Ms. Mahlen.

28. Underlying Plaintiffs claim these recordings were also utilized to institute criminal charges against Mahlen.

29. Underlying Plaintiffs also claim Defendants to the Underlying Action converted and destroyed Mahlen's cell phone in October of 2022 while he was out of state. Underlying Plaintiffs claim the phone contained personal and sentimental data, business data, and privileged communications with his clients.

30. Underlying Plaintiffs have brought claims against Bitterroot and West for:

(1) **Violations of the ECPA**. In support of this claim, Underlying Plaintiffs allege that in August of 2022, Ms. Mahlen placed a voice activated recording device in Mahlen's vehicle. Underlying Plaintiffs claim that between August 2023 and October 18, 2023, Mahlen conducted approximately 352 cellular phone calls from his private vehicle using his vehicle's Bluetooth connection. Underlying Plaintiffs claim that the recordings not only included Mahlen, but also the other individuals on the calls, such as the other Underlying Plaintiffs. Underlying Plaintiffs also claim the calls included Mahlen's clients. They further allege the calls also included individuals who were out of state thereby constituting instrumentalities of interstate commerce. Underlying Plaintiffs claim the audio and electronic communications were intentionally destroyed with the exception of one telephone call with Mahlen's mother, which took place on August 30, 2022. Underlying Plaintiffs claim West and Bitterroot

6

intentionally disclosed the contents of the communications to others, including the local news media. Underlying Plaintiffs contend this constitutes an additional and distinct violation of the ECPA. Underlying Plaintiffs assert that West, as an employee of Bitterroot, advised, assisted, oversaw, instructed, and acted in concert with Ms. Mahlen in placing the recording device in Mahlen's vehicle without Mahlen's knowledge. Underlying Plaintiffs also claim West was acting within the course and scope of her employment with Bitterroot when she monitored, listened to, and stored recorded communications, disseminated the recordings, verbally or otherwise to other individuals, and concealed from Mahlen that the calls were being recorded.

(2) **Unlawful Invasion of Privacy and Wrongful Intrusion Upon Seclusion**. Underlying Plaintiffs claim that West, both individually and as an employee of Bitterroot, advised, assisted, oversaw, or otherwise acted in concert with Ms. Mahlen with regard to the installation of the cameras, the interception of oral and electronic communications, and the use and dissemination of that data, all while aware that the communications were acquired in violation of the law. Underlying Plaintiffs claim entitlement to damages for the alleged invasion of privacy and wrongful intrusion upon seclusion by virtue of the illegally recorded phone calls.

(3) **Negligence**. Underlying Plaintiffs claim Defendants owed them duties, breached those duties, and the breach of duties caused damages. Underlying Plaintiffs claim Defendants failed to use ordinary care with respect to their actions, including but not limited to the creation of, use of, distribution of, and destruction of oral and electronic communications including private phone calls and private video recordings. Underlying Plaintiffs also claim Defendants intentionally or negligently converted and/or destroyed Mahlen's cell phone which contained personal data, allegedly adding to his devastation. Underlying Plaintiffs claim Defendants conversion and/or destruction of his cell phone constitutes property damage caused by negligence resulting in damages.

(4) **Negligent Hiring and Supervision and Negligence Per Se**. This claim is against Bitterroot only and is not asserted against West or the other Defendants. Underlying Plaintiffs claim Bitterroot began working for Ms. Mahlen on a pro bono basis with West assigned to Ms. Mahlen's case. Underlying Plaintiffs claim Montana Statutes and Administrative Rules require certain training and supervision of "private investigator trainee[s]"

7

like West. Underlying Plaintiffs claim that in addition to the requisite training, Bitterroot is statutorily responsible for the "good conduct" of its employees, including West.  Underlying Plaintiffs claim that Bitterroot has already confirmed that the privacy training West received was verbal and that Bitterroot failed to train and supervise West with respect to confidentiality and privacy laws, including but not limited to the ECPA. Underlying Plaintiffs claim Bitterroot was negligent in training and supervising West with regard to the collection, use, creation, storage, dissemination, and destruction of audio/visual surveillance and state and federal privacy laws. Underlying Plaintiffs claim Bitterroot is vicariously liable for any acts or omissions of its employees.  Underlying Plaintiffs allege that West and Ms. Mahlen now reside together and have a personal relationship.

31.     Underlying Plaintiffs claim entitlement to: (1) preliminary and injunctive relief with regard to any additional recordings of Underlying Plaintiffs; (2) actual damages suffered by Mahlen including general damages for past and future lost earning capacity, emotional distress, pain and suffering, humiliation, and physical effects, and resulting physical injury; (3) the utility value of Mahlen's phone and the business value of the contacts and communications, plus emotional distress damages for the intrinsic value of the data contained by that device; (4) the sum of actual damages suffered by Underlying Plaintiffs or alternatively statutory damages for violations; (5) attorney's fees and costs; (6) punitive damages; (7) damages pursuant to Mont. Code Ann. Sec. 27-1-203; (8) unspecified statutory damages; and (9) other relief the Court deems just and proper.

32.     Bitterroot tendered its defense to ACE and ACE agreed to ensure West and Bitterroot are defended (in conjunction with Bitterroot's other insurer)

8

under a reservation of rights pursuant to Montana law.

33. A true and correct copy of the reservation of rights letter sent to West is attached as **Exhibit C**.

34. A true and correct copy of the reservation of rights letter sent to Bitterroot is attached as **Exhibit D**.

## The Terms, Conditions & Preclusion of Coverage: Business Liability Coverage (Section II)

35. ACE restates and realleges its allegations in the previous paragraphs as though fully set forth and reincorporated herein.

36. The Policy provides Business Liability Coverage at Section II of the Policy.

37. The insuring agreement for Business Liability Coverage requires qualifying "bodily injury," "property damage," or "personal and advertising injury" to trigger coverage.

38. Underlying Plaintiffs have not asserted qualifying "bodily injury," "property damage," or "personal and advertising injury" in the Underlying Action to trigger coverage.

39. Even if they had asserted qualifying "bodily injury," "property damage," or "personal and advertising injury," the alleged damage was not caused by an "occurrence" as that term is defined in the Policy.

40. Additionally, the Policy requires that the damage occur during the

Policy period and also requires that Bitterroot's employees, like West, not be aware of such conduct or damage prior to the inception period of the Policy.

41. The inception period for the Policy is September 7, 2022. The Underlying Action includes conduct spanning for years prior to the inception date of the Policy. There is no coverage for conduct that occurred before the Policy's inception date and there is no coverage for continuing conduct after the Policy's inception date.

42. As to West, Underlying Plaintiffs assert that she engaged in conduct both in the course and scope of her employment with Bitterroot and for personal reasons. To the extent that there is any coverage available to West under the Policy, such coverage is limited to damages awarded against her "for acts within the scope of [her] employment by [Bitterroot] or while performing duties related to the conduct of [Bitterroot's] business." ACE does not provide insurance for any actions that West undertook in her individual and/or personal capacity.

43. Because the allegations in the Underlying Action do not trigger coverage under the Policy's insuring agreement, ACE has no duty to defend or indemnify the Defendants in the Underlying Action.

44. To the extent this Court finds the insuring agreement is triggered, exclusions to the Business Liability Coverage preclude any duty on the part of ACE to defend or indemnify the Defendants in the Underlying Action.

45. Exclusion a., the Expected or Intended Injury Exclusion precludes coverage for "bodily injury" or "property damage" because the conduct as alleged in the Underlying Complaint is intentional in nature.  Objectively, it would reasonably be expected to cause injury according to the allegations in the Underlying Action.

46. Exclusion p. is similar to Exclusion a. discussed in the preceding paragraph and precludes coverage for any "personal and advertising injury" damages asserted in the Underlying Action because Defendants' conduct, as alleged by the Underlying Plaintiffs was intentional in nature and a reasonable person would understand that such actions would have violated the rights of others.

47. Exclusion q. (as amended by endorsement) provides that there is no coverage for Access Or Disclosure Of Confidential or Personal Information and Data precludes coverage because Mahlen alleges his phone was lost or stolen and the data on his phone was lost.  This allegedly included personal sentimental data and business contacts.  This qualifies as electronic data and Exclusion q. precludes any duty on the part of ACE to provide coverage for such damages.

48. Exclusion s. also precludes coverage for some, or all of the damages asserted by the Underlying Plaintiffs.  Exclusion s. provides that there is no coverage for Recording And Distribution of Material or Information in Violation of Law.  The claims in the Underlying Action all arise out of conduct that

Underlying Plaintiffs claim violates the ECPA, thus implicating Exclusion s.

### The Terms, Conditions & Preclusion of Coverage: Professional Investigation Errors and Omissions Coverage Endorsement

49. ACE restates and realleges its allegations in the previous paragraphs as though fully set forth and reincorporated herein.

50. Bitterroot purchased Professional Investigation Errors and Omissions Coverage, which was added to the Policy's Business Liability Coverage (Section II) via an endorsement (the "Professional Investigation Endorsement").

51. The insuring agreement for the Professional Investigation Endorsement coverage requires that the damages asserted by the Underlying Plaintiffs qualify as "bodily injury," "property damage," or "personal and advertising injury." The damages asserted in the Underlying Action do not qualify as "bodily injury," "property damage," or "personal and advertising injury" as those terms are defined in the Policy.

52. The insuring agreement for the Professional Investigation Endorsement coverage alternatively provides that Underlying Plaintiffs may assert qualifying "economic loss" in order to trigger coverage under the Professional Investigation Endorsement.

53. Based on the allegations in the Underlying Action, Underlying Plaintiffs have not asserted qualifying "economic loss."

54. Therefore, there is no coverage under the insuring agreement for the Professional Investigation Endorsement coverage.

55. Additionally, the Professional Investigation Endorsement coverage insuring agreement provides that the allegedly wrongful must conduct first take place during the Policy's policy period.

56. The insuring agreement further provides that any continuation, change or resumption of the alleged damage during or after the policy period will be deemed to have occurred and been known prior to the policy period.

57. The allegedly wrongful conduct began well in advance of the September 7, 2022 inception date for the Policy. Accordingly, there is no Professional Investigation Endorsement coverage.

58. To the extent that there is any coverage available to West under the Professional Investigation Endorsement, such coverage is limited to damages awarded against her "for acts within the scope of [her] employment by [Bitterroot] or while performing duties related to the conduct of [Bitterroot's] business." ACE does not provide insurance for any actions that West undertook in her individual and/or personal capacity

59. The Professional Investigation Endorsement coverage includes the same exclusions for "bodily injury," "property damage," or "personal and advertising injury" cited above in the preceding section and those exclusions are

fully incorporated herein by reference with respect to the Professional Investigation Endorsement coverage.

60. Additionally, as to the Professional Investigation Endorsement coverage, there is no coverage for the claims in the Lawsuit alleging entitlement to injunctive relief or for punitive/exemplary damages by reason of Exclusion 8.

61. There is no insurance coverage for punitive damages in any event by reason of Mont. Code Ann. § 33-15-317 because the Policy does not specifically provide coverage for such damages.

62. Further, Exclusion No. 12 precludes coverage for theft or loss of money, securities or property of others. In the Underlying Action, Mahlen asserts the loss of property and damages. Such loss is precluded by Exclusion No. 12 to the Professional Investigation Endorsement coverage.

## Count I – Request for Declaratory Relief

63. ACE restates and realleges its allegations in the previous paragraphs as though fully set forth and reincorporated herein.

64. Currently, there is a dispute between ACE and the Defendants regarding their respective rights and duties with respect to the Policy described above.

65. The foregoing disputes entitle ACE to a declaration pursuant to 28 U.S.C. § 2201. These disputes include the following:

a. Whether the Policy provides coverage for the claims asserted by the Underlying Plaintiffs in the Underlying Action.

b. Whether ACE has a duty to defend Bitterroot in the Underlying Action.

c. Whether ACE has a duty to defend West in the Underlying Action.

d. If ACE is determined to have a duty to indemnify Defendants in the Underlying Action, which claims is ACE obligated to indemnify the Defendants for.

e. For such other issues as may arise in this action or the underlying action.

66. ACE respectfully requests the Court to determine that it has no duty to defend or indemnify the Defendants in the Underlying Action.

67. Alternatively, to the extent there is determined to be coverage, ACE respectfully requests this Court declare which Defendants are entitled to coverage and for what claims asserted in the Underlying Action.

## Prayer for Relief

WHEREFORE, ACE requests the following relief:

(1) For a declaration that the Policy does not provide coverage for the claims asserted against Defendants in the Underlying Action.

(2) In the event the Court determines there is no coverage under the

Policy for the claims asserted in the Underlying Action, for a declaration that ACE is not obligated to defend the Defendants in the Underlying Action.

(3) In the event the Court determines some of the claims are potentially covered by the Policy, for a declaration of which Defendants and which claims ACE is required to indemnify the Defendants for in the Underlying Action.

(4) For an award of ACE's attorney's fees and costs in this action.

(5) For such other declaratory relief as the Court deems just and equitable under the circumstances.

Dated this 20th day of September, 2024.

BERG LILLY, PC


By /s/ Elizabeth W. Lund
ELIZABETH W. LUND
*Attorney for Plaintiff*